**Downingtown Area School District v. Chester County Board of Assessment Appeals**

C.P. of Chester County, No. 2012-11947

*Mark P. Thompson*, for appellant.
*Sigmund J. Fleck*, for appellee.
*Sharon DiPaolo*, for intervener.

TUNNELL, *J.*, Oct. 29, 2014—Downingtown Area School District filed a timely appeal to this court from the decision of the Chester County Board of Assessment Appeals on October 17, 2012 not to change the assessment for the commercial property in question for tax year 2013 in the amount of $1,256.750.00.

This commercial property is encumbered by a long-term lease that is presently non-advantageous to the lessor and owner, appellant SPC 2001A-CSF-67 LLC ("Taxpayer"). Under the terms of the lease, Taxpayer is not receiving any annual rent from the property for the next ten (10) years. The property is no longer "income-producing," despite the presence of a long-term lease. The result is a property for which a buyer, who otherwise would be enticed by a property's ability to generate income, is limited if not prevented entirely from realizing such a benefit. Its value in the market place to the willing buyer

is thus significantly diminished. This fact bears greatly on the court's determination of the "actual value" of the property for assessment purposes.

The appeal was consolidated for trial only with another property tax appeal, *Downingtown Area School District v. Chester County Board of Assessment Appeals, et al.*, No. 2012-11946, which raised generally the same legal issue, namely the effect of a long-term lease on the actual value of a property. Although each property involved a similar legal issue, and the parties' positions were supported by the same expert witnesses, that property and its related appeal is factually the polar opposite of the one presently before the court. Encumbered by a long-term lease that is highly advantageous to the appellant LTK, the lessor and owner, its marketplace value as an income-producing property is significantly increased by its above market rents and necessarily so is its resultant actual value.

Hearings in the trial de novo were held on August 12, 2014 and September 18, 2014.

The court will issue separate decisions.

The court grants the appeal and makes the following:

### FINDINGS OF FACT

1. The appellant is Downingtown Area School District ("School District").

2. The appellees are the Chester County Board of Assessment Appeals, and the Intervener, the taxpayer, SCP 2001A-CSF-67 LLC ("Taxpayer").

3. The property that is the subject of the appeal is located at 109 East Uwchlan Avenue, Uwchlan Township, Chester County, PA 19341, Tax Parcel ID No. 33-04-0030.09A.

4. The School District filed an appeal of the assessment

for the subject property for tax year 2013.

5. On October 17, 2012, The Chester County Board of Assessment Appeals issued a decision sustaining the assessment at $1,256,750.

6. On November 14, 2012, the School District filed an appeal of the decision of the Board of Assessment Appeals.

7. At this time the appeal covers three (3) tax years.

8. The applicable common level ratio for tax year 2013 is 59%.

9. The applicable common level ratio for tax year 2014 is 60.2%.

10. The applicable common level ratio for tax year 2015 is 57.7%.

11. The property consists of 1.706 acres of land, improved by a one-story building constructed in 2001 containing 10,125 square feet. There are 59 parking spaces.

12. The construction costs for the property in 2001 were $2,329,342.

13. The construction of the building is masonry with concrete floors.

14. The building is configured for use by a single tenant.

15. The property is located in a neighborhood with commercial, office, industrial and retail uses.

16. Currently, the property is occupied by Lionville CVS, Inc. ("CVS"), a related entity of CVS, Inc..

17. CVS has occupied the property since construction in 2001, pursuant to a long-term lease with an initial term of 22 years, and ten 5-year options (the "CVS Lease"). If

all options are exercised, the lease extends until 2074.

18. The CVS Lease is structured under Section 467 of the Internal Revenue Code, 26 U.S. Code §467, with a pre-paid lump-sum payment of rent, deferred payments, and no current monthly rent.

19. Beginning in 2013, the annual contract rent for the subject property is $0.

20. This rent condition continues for the next ten (10) years, or until the end of the initial term of the CVS Lease. (CVS Ex. 7).

21. CVS does not own the grounds, building or improvements.

22. Taxpayer's interest in the property is a "leased fee."

23. CVS' interest in the property is a "leasehold interest."

24. Only about 15% of the square footage of the subject property is currently used as a pharmacy.

25. The remaining 85% of the square footage of the subject property is used for general retail purposes.

26. The School District called as its expert witness appraiser Patrick F. Noone.

27. Mr. Noone developed all three approaches to value: cost, sales, and income.

28. In developing the sales approach, all of the sales comparables selected by Mr. Noone were of CVS occupied buildings.

29. Taxpayer called as its expert witness appraiser Mark R. Shonberg.

30. Mr. Shonberg also developed all three approaches

to value: cost, sales, and income. However, Mr. Shonberg did not complete his assessment of the property under the "sales approach."

## DISCUSSION

Chester County is a third class county. Accordingly, the Consolidated County Assessment Law applies to tax assessment appeals arising in Chester County. 53 P.S. §8801(b)(1)(i). Pursuant to the Consolidated County Assessment Law, "all subjects and properties made taxable by the laws of this Commonwealth...including all real estate" shall be valued and assessed. Consolidated County Assessment Law, 53 P.S. §8811(a)(1); *see also*, General County Assessment Law, 72 P.S. Sec. 5020-201. Under the Consolidated County Assessment Law, the county has the power to rate and value all objects of taxation according to the "actual value" thereof. 53 P.S. §8842; *see also, F&M Schaeffer Brewing Co. v. Lehigh County Bd. of Appeals,* 530 Pa. 451, 456, 610 A.2d 1, 3 (Pa. 1992).

The term "actual value" is defined as market value or fair market value, which in turn are defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to, which the property is adapted and might in reason be applied." *F&M Schaeffer*, 530 Pa. at 457, 610 A.2d at 3 (quoting *Buhl Found. v. Bd. of Prop. Assmt*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962)). In arriving at the "actual value" under 72 P.S. §5020-402(a), all three appraisal methods — cost, income and comparable sales approaches — must be considered in conjunction with one another. *Morelyn Plaza Ltd. Partnership v. Bucks County Bd. of Assessments*, 1997 WL 68578, *3 (Bankr. E.D.Pa. 1997), *aff'd*, 149 F.3d 1164 (3rd Cir. 1998).

In a tax assessment appeal, the court of common pleas

must proceed *de novo*. *Murtagh v. County of Berks*, 715 A.2d 548, 552 (Pa. Cmwlth. 1998). In a *de novo* appeal, it is the trial court's duty "to independently determine the fair market value of the parcel on the basis of the competent, credible and relevant evidence presented by the parties." *Green v. Schuylkill County Bd. of Assessment Appeals*, 565 Pa. 185, 196, 772 A.2d 419, 426 (2001); *Westinghouse Electric Corp. v. Bd. of Property Assessment*, 539 Pa. 453, 463, 652 A.2d 1306, 1311 (1995). The trial court also has the discretion to decide which of the methods of valuation is the most appropriate and applicable to the given property. *Willow Valley Manor, Inc.*, 810 A.2d 720, 723 (2002). If the trial court is presented with conflicting testimony by equally credible experts, it is appropriate for the court to find that the fair market value of the property is "somewhere between the values presented by the competing experts." *Green*, 565 Pa. at 208, 772 A.2d at 433; *Westinghouse*, 539 Pa. at 464, 652 A.2d at 1312; *Trustees of the Int'l Brotherhood of Painters v. Bd. of Revision of Taxes*, 1997 WL 1433766 (Phila. C.P. 1997). The trial court is free to accept all, part or none of an expert's testimony in determining value. *West Mifflin Area School Dist. v. Bd. of Property Assessment*, 802 A.2d 687, 691 (Pa. Cmwlth. 2002).

In a tax assessment appeal, once the taxing authority has presented its assessment record into evidence, it has made out a *prima facie* case for the validity of the assessment by fixing the time when the burden of coming forward with evidence shifts to the appellant. *Deitch Co. v. Bd. of Property Assessment*, 471 Pa. 213, 221, 209 A.2d 397, 402 (1965). If the appellant produces sufficient proof to overcome its initially allotted status, the evidentiary value of the taxing authority's assessment record ceases and may no longer influence the court's determination of the assessment's correctness. *Green*, 565 Pa. at 195, 772

A.2d at 425-426. In that event, the appellant continues to carry the burden. *Westinghouse Electric Corp. v. Board of Property Assessment*, 539 Pa. 453, 460, 652 A.2d 1306, 1310 (1995). *See also* 16 McQuillin, *The Law of Municipal Corporations* §44.124 (3rd Ed.).

Finally, at the center of every real property assessment appeal is uniformity. The Uniformity Clause of the Pennsylvania Constitution provides that:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, §1.

The Supreme Court reminded recently, in *Friends of Pennsylvania Leadership Charter School v. Chester County Board of Assessment Appeals*, 61 A.3d 354 (Pa. 2014):

"Taxation, however, is not a matter of exact science; hence, absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Clifton v. Allegheny Co.*, 969 A.2d 1197, 1210 (Pa. 2009) (citing *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985); *In re: Harleigh Realty Co.*, 149 A. 653, 654 (Pa. 1930) ("Scientific formulae, arithmetical deductions and mental contemplations, have small value in making assessments under our practical system of taxation.")). "Some practical inequalities are obviously anticipated, and so long as the taxing scheme does not impose substantially unequal tax burdens, rough uniformity with a limited amount of variation is permitted." *Id.*, at 1210-11 (citation omitted), *see also Delaware, L&W.R. Co.'s Tax Assessment*, 73 A. 429, 430 (Pa. 1909) (noting Uniformity Clause requires only "substantial uniformity, which means as nearly

uniform as practicable in view of the instrumentalities with which and subjects upon which tax laws operate").

Determining the "Actual Value" of the Real Property Encumbered by the CVS Lease

The existence of a long-term lease, which encumbers the present property and creates different interests in the property, impacts the court's value assessment, as discussed below.

Ownership Interests in Property

There are several types of ownership interests in property, two of which are involved in this case. "Fee simple" is the most complete form of ownership. It is absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power and escheat. The Appraisal of Real Estate, 14th ed. 2013 at 4, The Dictionary of Real Estate Appraisal, 5th ed. 2010 at 78. A "leased fee" interest is "[a]n ownership interest held by the landlord with the rights of use and occupancy transferred by the lease to others." *Tech One*, 617 Pa. at 445 n.8 (Pa. 2012)(quoting The Appraisal of Real Estate, 12th ed. 2001 at 83). *See also*, The Appraisal of Real Estate, 14th ed. 2013 at 72; The Dictionary of Real Estate Appraisal, 5th ed. 2010 at 111. A "leasehold" interest is "[t]he interest held by the lessee (the tenant or renter) through a lease transferring the rights of use and occupancy for a stated term under certain conditions." *Tech One*, 617 Pa. at 447 n. 13, 53 A.3d at 690 n. 13 (quoting The Dictionary of Real Estate Appraisal 4th ed. 2002 at 162); *see also*, The Appraisal of Real Estate, 14th ed. 2013 at 72; *see also*, The Dictionary of Real Estate Appraisal 5th ed. 2010 at 111.

In this case, the CVS Lease creates two interests in

the subject property: a leased fee and a leasehold interest. Taxpayer holds the "leased fee." CVS holds the "leasehold interest."

Impact of a Long-term Lease on the Value of A Property

The question of whether or not a property subject to a long-term lease should be valued for assessment purposes in its "unencumbered" or "fee simple" form was addressed by the Pennsylvania Supreme Court *In re Appeal of Marple Springfield*, 530 Pa. 122, 706 A.2d 708 (1992) [*Marple Springfield I*]. The court concluded that it should not. According to the court, "to interpret the tax assessment statute as requiring valuation of property in hypothetical "unencumbered form," ...is to ignore the economic realities of commercial real estate transactions." *Id. Marple Springfield I* established two basic principles applicable to valuing real property encumbered by a long-term lease. First, the "economic reality" of the existence of the lease must be considered by an appraiser in establishing the market value of property encumbered by a lease as it will be a factor which affects the price which a purchaser of the property is willing to pay. Second, when the property generates income, the capitalization of income approach is an appropriate method to use in ascertaining its value and when applying that method, the "contract rent" received under the lease is the relevant income stream which is to be capitalized, even if it is below prevailing market rental rates. *Id.*

In the recent case of *Tech One Assocs. v. Bd. of Property Assessment, Appeals and Review of Allegheny County*, 617 Pa. 439, 465, 53 A.3d 685, 700 (Pa. 2012), the court went further in addressing the impact of long-term leases on property values when it considered which of the interests created by such a long-term lease should be valued in assessing property taxes. It concluded that the market

value of the property as a whole (both the leased fee and leasehold interest) must be considered for tax assessment purposes. *Id.* The appellant lessor in *Tech One* challenged the trial court's rejection of its appraisal method because it did not include consideration of the value of buildings and other improvements on the land, which were owned by the lessee under the terms of a long-term lease. The lessor argued that the improvements were not taxable real estate because they were owned by the lessee as leasehold interests. The *Tech One* Court summarized the facts before it as follows:

> The subject of this appeal is a 47.5 acre piece of land... upon which is situated a community shopping center..., a multi-screen movie theater, and a restaurant.... The land and buildings comprise one tax parcel....

> [Lessor] purchased the then-undeveloped land during the 1980's. In 1989, [Lessor] entered into a 50-year lease agreement...1990, with Lessee in a transaction that [was] found to be "arm's length."...Lessee was given the right under this lease to construct buildings on the land and to make other improvements to the land, and, in the early 1990's, Lessee constructed the shopping center, movie theater, and restaurant, as well as their surrounding parking lots, lighting fixtures, and the access roads.

> The lease guarantees Lessee the first opportunity to purchase any part of [Lessor's]...interest in the premises which it elects to sell during the term of the lease, and it also gives Lessee a purchase option for the land on which the buildings sit, which it is entitled to exercise in the sixth month of year 49 of the lease. If Lessee fails to exercise this purchase option, upon the termination of the lease, [Lessor]...has the right to retake possession

of the entire premises....

Lessee was required to pay [Lessor]...$665,000 in rent annually for the entire term of the lease. The lease also required Lessee to pay all real estate taxes levied on the premises, and granted Lessee the option, at any time of its choosing, to assign all of the rights, title, and interests which it possessed under the lease, and, correspondingly, required any assignee to assume Lessee's obligations under the lease. Lessee was also permitted to sublease part or all of the premises to a tenant for any use permitted by the lease.

The court concluded that "the statutes of this Commonwealth authorizing the taxation of real estate are concerned with the particular nature of the property involved, not the means by which the property is owned... Consequently, the mere fact that the shopping center buildings and other improvements to the land in the instant matter were owned by Lessee as leasehold interests does not alter the fact that they are particular types of real estate enumerated in Section 201(a) and, thus, are proper subjects of taxation." Having determined that the leasehold interest in buildings and improvements at the shopping center were "real estate" and, thus, subjects of taxation, the remaining question for the *Tech One* Court to answer was whether their market value had been properly established, taking into account its earlier decision in *Marple Springfield I.*

The *Tech One* Court reasoned that, although not mentioned therein, *Marple Newtown I* did not preclude the consideration of a leasehold interest, but simply necessitated that, in conducting this valuation, the impact of the lease on the market value of the real estate owned as the leased fee and, also, on the market value of the real estate owned as a leasehold interest must be considered. The *Tech One* Court further held that if the

holder of the leased fee and the leasehold interest each receive rent pursuant to a contractual arrangement, it is appropriate, pursuant to *Marple Springfield I*, to employ the capitalization of income approach to value those interests utilizing the contract rent. In sum, the court held that "in conducting this type of valuation, the impact of the market value of the real estate owned as the leased fee and, also, the market value of the real estate owned as a leasehold interest must be considered." *Id.*

*Tech One* stands for the proposition that:

the..."economic reality test" be applied separately to the leasehold and the leased fee interests, rather than only to the leased fee. Thus, the "test" is to be used as a valuation tool for determining the market value of these real property interests. That is, what a willing buyer would pay a willing seller for the leasehold and what a willing buyer would pay a willing seller for the leased fee interest. Their combined value equals the total assessable real estate.

Assessment Law and Procedure in Pennsylvania, by Bert M. Goodman, Esquire 14th ed. (2013) at 190-91.

Stated in mathematical terms, and as developed in Marple Newtown I and Tech One, a property subject to a long-term lease is valued as follows:

Actual value = leased fee value (economic reality test + contract rent) + leasehold value (economic reality test + contract rent).

Although some of the facts presented in *Tech One* appear to differ from those here (*i.e.* "ownership" of the buildings on the land), the essential facts for valuation purposes are the same — the lessee is a tenant occupying property by virtue of a long-term lease and thus has a "leasehold

interest." Furthermore, nowhere in the decision did the Pennsylvania Supreme Court state that it was limiting its holding to just the facts presented. There were factual distinctions in *Marple Newtown I* and *Tech One*, yet those did not preclude the *Tech One* Court from applying the principles of *Marple Newtown I* in conducting its analysis. The same reasoning is applicable here. The concepts of leased fee and leasehold interests should apply to all leased properties, transcending the fact pattern presented in *Tech One*. The court, therefore, must consider both of the interests created by the CVS Lease.

The Selection of An Appraisal Method

Income Approach

The above analysis of value is appropriate for encumbered properties because ordinarily the property is "income-producing," which is marketable, and thus purchased, because of the right to receive a future income stream." *See* Assessment Law and Procedure in Pennsylvania, by Bert M. Goodman, Esquire 14th ed. (2013) at 195. Yet, this is not an ordinary lease or by implication an ordinary case. Under the "economic realities" of the CVS Lease, the only lease with which the court must be concerned, there is currently no income stream or "contract rent" — for either the leased fee or leasehold interest. A purchaser of the leased fee would not view this property as potentially "income-producing property" because the rent for the applicable years is $0, a fact agreed to by both experts. Even more significant is the fact that it will remain that way for the foreseeable future. Thus, in this instance, the income approach does not assist the court in determining the actual value of the leased fee.

Moreover, neither expert provided the court with credible evidence from which it could ascertain the market

or actual value of the "leasehold interest" held by CVS. There is no sublease as in *Tech One* and no income to CVS to be valued. In the case of Mr. Noone, he did not consider the leasehold interest at all. Mr. Shonberg opined that the court must assign a value to the leasehold interest and adjusted the property's actual value based upon the so-called leasehold "benefit" to CVS. According to Mr. Shonberg, there is a "leasehold benefit" to CVS resulting from the current $0 monthly rent. He values that "benefit" as the variance "between the contract occupancy costs (rent and expense) and market costs". Neither Taxpayer nor Mr. Shonberg offered any legal support for this proposition.[1] Taxpayer attempted to support its analysis by referring in its briefing to the general proposition that the sum of the fee subject to the leases and the leasehold interest "tend to be the same as the value of the property free and clear" citing *In re Appeal of Cynwyd Investments*, 679 A.2d 304, n.10 (Pa. Commw. Ct. 1995), which in turn quoted The Appraisal of Real Estate 469 (7th ed. 1978)). That proposition does not apply in all situations as evidenced by the use of the term "tend." There can be exceptions to any rule and the present situation is necessarily one of those situations. As stated in the 14th edition of that same appraisal manual, The Appraisal of Real Estate 449, "the incremental value created by a lease premium can result in a leased fee value that exceeds the fee simple value." The reverse can also be true.

The court's task in this case, as dictated by controlling case law, is to consider the impact of the CVS Lease on the property, not to assess the property in its "unencumbered"

---

1. Taxpayer referred the court to discussions in appraisal materials of the concept of "positive and negative leaseholds." However, nothing in those selections provided the court with any controlling case law endorsing Taxpayer's analysis as presented. Although Mr. Shonberg testified that he has utilized such an analysis in bankruptcy proceedings, this is not such a proceeding.

or "fee simple form." The court determines that the impact of the CVS Lease on the property is such that the "income approach" is not the appropriate approach for determining value given this lease's "economic reality." With no credible value estimate provided for the leasehold interest, the court must look to the approach that best values the remaining interest, the "leased fee" held by Taxpayer.

Sales and Cost Approaches

Highest and Best Use

Real property has both a use value and a market value which may be the same or different depending on the property and the market. The Appraisal of Real Estate, 14th ed. at 62. "Use value" in real estate appraisal means "the value a specific property has for a specific use." *Id.* Use value may vary based on external factors such as changes in business operations. *Id.*

The Pennsylvania Supreme Court has recognized that authorities in the field of real estate valuation distinguish between market value (or value-in-exchange) and use value. *F&M Schaeffer*, 530 Pa. at 457, 610 A.2d at 3 (citing the The Appraisal of Real Estate, 9th edition.) "Use value" or "value-in-use" represents the value to a specific user. *Id.* "Because value-in-use is based on the use of the property and the value of that use to the current user, it may result in a higher value than the value in the marketplace." *Id.* Value-in-use is not a reflection of fair market value and is not relevant in tax assessment cases because only the fair market value (or value-in-exchange) is relevant in tax assessment cases. *Id.* at 458, 610 A.2d at 4. The Pennsylvania Supreme Court held that "[a] property's use and its resulting value-in-use cannot be considered in assessing the fair market value of property for tax assessment purposes in Pennsylvania." *Id.*

Accordingly, appraisals of real estate in assessment appeals must present value-in-exchange, or market value, and not the value-in-use to the particular user. This concept ties in with the appraisal concept of determining the property's highest and best use. The purpose of the highest and best use analysis is to help identify comparables. (N.T. 83, 8/12/14). Accordingly, in determining the highest and best use for the subject properties, the appraiser must consider *all* uses to which the properties apply and not just the current use. If the appraiser incorrectly identifies the highest and best use which, in turn, informs the appraiser as to what comparables to select, that error will carry all the way through the valuation opinion. If the appraiser identifies an improperly narrow highest and best use (*e.g.* selecting only the current use), then that determination will inform the comparables selected, and will carry all the way through the valuation opinion which will be a value-in-use opinion.

Analysis Under the Sales Approach

The court rejects the comparables (all CVS occupied buildings) selected by Appellant's appraisal, Mr. Noone, in constructing his "sales approach" as the appropriate comparables consistent with the highest and best use of the property. In determining the highest and best use for a subject property, an appraiser must consider all uses to which the properties apply and not just the current use. Mr. Shonberg completed this exercise correctly by considering all of the uses to which the improvements might be put, concluding that the properties' highest and best use is general retail use which, of course, includes drug store use but potentially other retail uses as well. Mr. Shonberg, however, developed the sales approach only as a "test" and not as an indicator of value. Although he provided the court with the price per square foot of the buildings on the

nine (9) comparable properties, he did not complete the analysis and necessarily failed to provide the court with valuation estimates for each of the years in question. The court, as a result, is left only with the third approach to value, the "cost approach," as the best indicator of value in this case.

Analysis Under the Cost Approach

The final approach to value presented to the court by the parties' experts was the "cost approach." After considering the analysis and testimony of both experts, the court concludes that the valuation provided by Taxpayer's expert, which utilized and examined the actual construction costs of the property in question and considered replacement costs for single user retail, Class C buildings, was the most credible assessment of value. Based upon that expert testimony, the court concludes that the actual value of the property in accordance with the cost approach as of January 1, 2013 (effective 8/1/2012) is $2,110,000, as of January 1, 2014 is $2,200,000 and as of January 1, 2015 is $2,200,000.

## CONCLUSIONS OF LAW

1. The Board of Assessment Appeals established a *prima facie* case which was rebutted by competent, credible and relevant evidence.

2. The competent, credible and relevant evidence was nonetheless conflicting in certain respects, and it is the court's obligation to weigh the same and determine the value of the property.

3. Mr. Shonberg's conclusion of highest and best use of the property as improved represents value-in-exchange.

4. The "cost approach" is the most appropriate approach to value for the given circumstances involved with this

property.

5. Mr. Shonberg's ultimate conclusion of actual value is value-in-exchange.

6. Using the cost approach as developed by Mr. Shonberg, the actual value of the property as of January 1, 2013 (effective 8/1/2012) is $2,110,000, as of January 1, 2014 is $2,200,000.

7. Using the cost approach as developed by Mr. Shonberg, the actual value of the property as of January 1, 2015 is $2,200,000.

8. Application of the respective common level ratios to the actual value yields the following assessed values:

For January 1, 2013: $1,244,900

For January 1, 2014: $1,336,440

For January 1, 2015: $1,336,440

An appropriate Order follows.

ORDER

And now, this 29th day of October, 2014, following a trial *de novo* in the above captioned matter by the undersigned, sitting without a jury, the court hereby grants the appeal of Downingtown Area School District, and determines the assessed value for Tax Parcel No. 33-04-0030.09A as follows:

For January 1, 2013: $1,244,900

For January 1, 2014: $1,336,440

For January 1, 2015: $1,336,440